UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| AMANDA BAKER | ) | |
| | ) | |
| Plaintiff, | ) | Civil. No.: 3:21-CV-00021-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CREDIT ACCEPTANCE CORPORATION, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

This matter is before the Court upon Defendant Credit Acceptance Corporation's Motion to Dismiss and Compel Arbitration. [R. 7; R. 7-1.] On March 30, 2021, Plaintiff Amanda Baker filed suit against Credit Acceptance Corporation in the Henry County Circuit Court. [R. 1-1.] Ms. Baker therein alleged violations of the Fair Credit Reporting Act, the Kentucky Consumer Protection Act, and Article 9 of Kentucky's Uniform Commercial Code. *Id.* at 8-10. On May 5, 2021, Credit Acceptance filed a notice of removal for all claims pursuant to 28 U.S.C §§ 1331 and 1367(a). [R. 1 at 2.] On May 21, 2021, Credit Acceptance filed a Motion to Dismiss and Compel Arbitration, asserting that Ms. Baker's contract contained an arbitration agreement and that all claims in this lawsuit fall within the scope of that agreement. [R. 7-1.] Plaintiff has not timely filed a response to Defendant's Motion. The Court, having review the record and for the reasons set forth herein, will **GRANT** Credit Acceptance's Motion.

**I**

In February 2015, Ms. Baker purchased a 2002 Toyota RAV4. [R. 1-1 at 4.] Credit Acceptance financed the sale and purchase of the RAV4 and was granted a lien on the vehicle.

*Id.* In February 2017, Ms. Baker suffered an economic setback and defaulted on Credit Acceptance's loan. *Id.* Credit Acceptance then repossessed the vehicle. *Id.* On March 30, 2021, Ms. Baker filed a Complaint in the Henry County Circuit Court alleging a multitude of claims against Credit Acceptance that implicate the Fair Credit Reporting Act, the Kentucky Consumer Protection Act, and Article 9 of Kentucky's Uniform Commercial Code. [R. 1-1 at 5-6.] On May 5, Credit Acceptance removed all claims to the Eastern District of Kentucky pursuant to 28 U.S.C §§ 1331 and 1367(a). [R. 1 at 2.] On May 21, Credit Acceptance filed a motion to dismiss all claims and compel Ms. Baker to pursue her claims through arbitration, contending that Ms. Baker is bound by an arbitration found in the contract formed between her and Credit Acceptance when she purchased her vehicle. [R. 7 at 1.] Ms. Baker has not responded to Credit Acceptance's Motion and this matter is ripe for the Court's review.

**II**

Before compelling an unwilling party to arbitrate, "the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003); *see also* 9 U.S.C. § 2. The Sixth Circuit has outlined four steps a district court must take in analyzing a motion to compel arbitration:

> First, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of the agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (*quoting Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

**A**

The Court first examines whether the parties agreed to arbitrate. The Federal Arbitration Act governs the interpretation and enforceability of arbitration clauses and provides that arbitration agreements are enforceable according to their terms. *See* 9 U.S.C. § 2. Pages four and five of the contract at issue here contain the arbitration agreement. [R. 7-2 at 4-5.] The agreement is clearly labeled as "AGREEMENT TO ARBITRATE" in bold font, underlined, and with a substantially larger typeface than the surrounding text. *Id.* at 4. The contract, furthermore, gave Ms. Baker the right to reject the arbitration clause with absolutely no bearing on the remainder of the terms of the contract. *Id.* The agreement also states "either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute. . . ." *Id.* at 5. Ms. Baker did not reject the arbitration clause in person, did not mail in a later rejection. *Id.* Instead, Ms. Baker assented to the contract by initialing pages four and five. *Id* at 4-5. The parties clearly agreed to arbitration in this matter.

**B**

The Court next examines the scope of Ms. Baker and Credit Acceptance's agreement. When assessing whether a claim falls within the scope of an arbitration clause, a court looks to the plain language of the agreement. *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, 383 F. App'x 517, 521 (6th Cir. 2010); *see also Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006). Any doubts regarding arbitrability should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Ferro Corp. v. Garrison Indus.*, 142 F.3d 926, 932 (6th Cir. 1998). Another proper method of analyzing whether an issue is within the scope of an arbitration agreement is to "ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is

likely outside the scope of the arbitration agreement." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 504 (6th Cir. 2007); *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003).

As discussed above, the arbitration agreement may be applied to any "Dispute" that arises between Ms. Baker and Credit Acceptance. [R. 7-2 at 5.] The definition of "Dispute" within the arbitration agreement is "any controversy or claim between You and Us arising out of or in any way related to this contract." [R. 7-2 at 5.] "'Dispute' shall have the broadest possible meaning, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories." *Id.* All three of Ms. Baker's claims here are based on statutes and thus fall squarely within the scope of the arbitration agreement. [*See* R. 1-1 at 8-10.] Furthermore, all of Ms. Baker's claims exist because of debts incurred by her entry into the contract at the core of this dispute. Thus, the action could not be maintained without reference to the contract or relationship at issue, and the claims are within the scope of the arbitration agreement. *See Nestle Waters*, 505 F.3d at 504; *Fazio*, 340 F.3d at 395.

**C**

Next, the Court examines whether Congress intended claims under the FCRA to be nonarbitrable. As this Court and other district courts within the Sixth Circuit have held, "[t]here is no indication that Congress intended to preclude the arbitration of FCRA claims." *McMahan v. Byrider Sales of Indiana S, LLC*, 2017 WL 4077013, at *4 (W.D. Ky. Sept. 14, 2017); *see Yaroma v. Cashcall, Inc.*, 130 F. Supp. 3d 1055, 1065 (E.D. Ky. Sept. 16, 2015); *Liedtke v. Frank*, 437 F. Supp. 2d 696, 700 (N.D. Ohio June 19, 2006). To the extent an analysis of the arbitrability of Ms. Baker's state law claims is needed, as Defendant points out, courts often order KCPA claims to arbitration as well. *See Francis v. Cute Suzie, LLC*, 2011 WL 2174348, at

*4 (W.D. Ky. June 2, 2011) (applying Kentucky law); *in re Kiskaden*, 571 B.R. 226, 240 (Bankr. E.D. Ky. Apr. 7, 2017). Lastly, nothing in Kentucky's UCC statute precludes arbitration. *See* Ky. Rev. Stat. Ann. 355.9-101, *et seq*. Because a valid arbitration agreement exists, all Ms. Baker's claims fall within the scope of that agreement, and neither Congress nor the Kentucky legislature intended claims under the relevant statutes to be nonarbitrable, the Court will compel arbitration of Ms. Baker's claims. [R. 1-1 at 8-10.]

**D**

Once an arbitration clause has been deemed enforceable, it is proper under 9 U.S.C. § 3 to issue a stay of all further proceedings until arbitration is complete. *See Fazio*, 340 F.3d at 392. However, when all of the plaintiff's claims in a suit will be referred to arbitration, the case may be dismissed. *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 297, 975 (6th Cir. 2009); *Hensel v. Cargill, Inc.*, 193 F.3d 245, 1999 WL 993775, at *4 (6th Cir. 1999) (unpublished table decision); *Yaroma*, 130 F. Supp. 3d at 1067-68. Thus, because the Court has determined that all of Ms. Baker's claims will be subjected to arbitration, it will dismiss the suit with prejudice.

**III**

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendant Credit Acceptance Corporation's Motion to Dismiss and Compel Arbitration **[R. 7]** is **GRANTED**, Ms. Baker's claims are **DISMISSED WITH PREJUDICE,** and that this matter is **STRICKEN** from the Record.

This the 13th day of August, 2021.




Gregory F. Van Tatenhove
United States District Judge